IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SCOTT C. WELLS, ) | |
| ) | |
| Plaintiff, ) | Case No. CV04-262-S-EJL |
| ) | |
| vs. ) | MEMORANDUM ORDER |
| ) | |
| MUTUAL OF ENUMCLAW, BECKY NICHOL, ) | |
| RENA BILODEAU, MARTY HAFFER, JOHN ) | |
| ENGEL, and John Does I to XX whose true ) | |
| identities are unknown, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Pending before the Court in the above-entitled matter is Defendants' Motion for Summary Judgment (Docket No. 31). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

**Standard of Review**

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear

MEMORANDUM ORDER - Page 1
05ORDERS\WELLS

the burden of proof at trial. See, Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.[1]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

**Factual Background**

---

[1] See also, Rule 56(e) which provides, in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Plaintiff Scott Wells ("Wells") filed his complaint in state court alleging Defendants Mutual of Enumclaw ("MOE") and several individuals who worked for MOE, were responsible for wrongfully terminating his employment with MOE in violation of the American with Disabilities Act, the Idaho Human Rights Act, public policy against discriminating against the disabled, intentional interference with prospective business advantage, intentional interference with Plaintiff's contract with MOE and intentional interference with Plaintiff's contract with Parker, Smith & Feek (MOE's benefits broker) and Blue Cross (MOE's health insurance provider). Defendants removed the state court action to federal court.

Wells worked as a claims adjuster for MOE from 1990 until his termination on March 25, 2003. At the time of his termination, Wells' title was Senior Multi-Line Claims Adjuster III. Prior to Wells' termination, there were several instances of anger outbursts by Wells. Beginning in 1999, when Wells transferred to Idaho, his manager issued a written confirmation of a reprimand for inappropriate behavior. In May of 2000, his supervisor discussed an anger outburst with Wells and suggested he contact the Employee Assistance Program and get some counseling. Wells also contacted his doctor for an examination so see if his emotional problems had a physical basis. Wells' doctor (Dr. Kornfield) referred him to neuropsychologist Craig Beaver, Ph.D. for evaluation. Dr. Beaver diagnosed Wells with a cognitive dysfunction and recommended an anti-depressant, counseling and repete testing to determine if there was a further decline in functioning. It is undisputed Dr. Beaver's evaluation results were not provided to MOE.

In 2002, MOE received another complaint regarding inappropriate workplace behavior by Wells. A performance improvement plan was developed wherein Wells agreed to seek professional counseling. A letter from his counselor was sent to MOE indicating Wells was attending counseling for the purpose of anger management skills and was highly motivated to handle his anger more effectively. Based on satisfactory improvement, the performance improvement plan was terminated early.

In 2002, Wells also had additional testing and evaluation completed by Drs. Kornfield, Beaver, and Asher who determined Wells suffered from dementia as a result of early stage Alzheimer's disease physically causing cognitive problems and decreased emotional control

requiring anti-dementia medication, medical monitoring with medication adjustment and counseling. Again, it is undisputed that the results of the medical tests and evaluations were not provided to MOE.

However, in November 2002, Wells was again issued a reprimand for inappropriate conduct. In December of 2002, an independent insurance agent requested Wells no longer handle his clients' claims.

In January 2003, another complaint was received from a claimant and Wells asked Becky Nichol to reassign one of his files as he claimed he had a personality conflict with the claimant. Wells maintains that at this meeting he told Ms. Nichol that he suffered from dementia. Ms. Nichol maintains she was not informed of any illness by Wells. Wells admitted in his deposition, that he did not say he suffered from a disability nor did he request accommodation under the ADA for his anger outbursts or illness. Wells did not explain his illness or symptoms of his illness to his employer or provide the 2002 medical evaluation results to his employer or allow his employer to contact his medical doctors. Wells also admits he did not inform Ms. Nichol he could not perform his job because of his condition or illness. Wells continued to work in his same position after he alleges he disclosed his illness to Ms. Nichol.

In February 2003, Rena Bilodeau, MOE's Vice President of Human Resources, received a call from MOE's benefits broker Parker, Smith & Feek indicating Wells was threatening to instigate litigation against the benefits broker for failing to assist him in getting Blue Cross to pay certain medical claims. Ms. Bilodeau called to discuss the matter with Wells. Wells maintained it was a personal matter and not her concern. Wells maintains Bilodeau acted unprofessionally towards him and Bilodeau maintains Wells' acted inappropriately towards her. After the this incident, MOE began an investigation into Wells' performance by Jeanne Flemming. Ms. Flemming met with two of Wells' previous managers to review his file. It was determined Wells' behavioral problems continued and that he should be terminated.

In March 2003, MOE received a complaint from another agent regarding Wells. The complaint alleged Wells was acting in an angry, inappropriate way towards an insured.

On March 25, 2003, Wells was called into a meeting with Marty Hafer and John Engel and informed he was being terminated. Wells was told he was being terminated due to his attitude and his anger issues. Wells maintains he informed the managers they could not fire him because his illness sometimes caused anger. Wells filed his complaint on April 26, 2004 alleging his was terminated in violation of the ADA, IHRA and against public policy.

Wells testified he was able to perform the essential functions of his job at the time of his termination. Wells' doctors maintain that with reasonable accommodations including but not limited to a possible leave of absence, adjusting his medications and additional counseling, Wells could have continued to perform his job a claims adjuster. Dr. Beaver testified in his deposition that the only major life activity that was substantially limited was Wells' ability to work although Dr. Beaver agreed Wells could perform his claim adjuster position as it was familiar to him. Dr. Kornfield believes that at the time of his termination Wells' learning and working ability were substantially limited by his illness.

**Analysis**

1. <u>ADA and Idaho Human Right Act (Counts 1 and 2)</u>

Defendant moves for summary judgment on Counts 1 and 2 arguing Plaintiff does not meet the definition of disabled under the ADA and IRHA and even if Plaintiff met the requirements, Well failed to comply with the ADA by advising MOE he believed he was disabled and to request accommodation. Plaintiff responds that genuine issues of material fact exist regarding whether Wells was disabled and whether MOE had notice of his illness or should have know of his illness. Alternatively, since MOE had been "accommodating" Plaintiff since 2000, MOE needed to continue the interactive process of revising his accommodation and failure to do so is a violation of the ADA and IRHA.

The ADA prohibits discrimination against a "qualified individual with a disability because of the disability of such in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). An employer discriminates against a qualified

individual with a disability by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A).

To establish a *prima facie* case of disability discrimination under either the ADA or Idaho law, the plaintiff must show:

1) he/she has a disability;
2) he/she is a qualified individual for the job in question:[2] and
3) he/she suffered an adverse employment action because of his/her disability.

Snead v. Metropolitan Prop. & Cas. Ins. Co., 237 F. 3d 1080, 1087 (9th Cir. 2001).

The employer can rebut the *prima facie* case by establishing it had a legitimate, non-discriminatory reason for the adverse employment action.  Then the burden shifts back to plaintiff to present "specific, substantial evidence" that the employer's proffered reason was pretextual. Aragon v. Republic Silver State Dispposal, Inc., 292 F.3d 654,659 (9th Cir. 2002).  The legal standard is the same under both the ADA and the IHRA, so the Court will address both counts with one analysis.  See Ostrander v. Fram Bureau Mutual Ins. Co. of Idaho, Inc., 123 Idaho 650, 653, 851 P.2d 946, 949 (1993).

### A. Was Plaintiff Disabled Under the ADA?

At issue in this case is the threshold issue of whether Wells suffered from a disability protected by the ADA at the time MOE terminated his employment.  The ADA defines "disability" with respect to an individual in as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
(B) a record of such an impairment; or
(C) being regarded as having such an impairment.

42 U.S.C. § 12112(a).

---

[2] "Qualified individual with a disability" means "an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m). It appears from the record that Defendants are not challenging that Plaintiff was a qualified individual for the claims adjuster position he held at the time of his termination.

The ADA does not define "substantially limits" or "major life activities", however, the interpretive regulations promugated by the EEOC defines the terms. *"Major life activities* means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I). "Substantially limits" to mean:

> (i) unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).

Whether an impairment is substantially limiting is determined in light of: "(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630(j)(2).

The regulations provide further guidance with respect "substantially limits" if the particular major life activity affected is "working":

> The term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person have comparable training, skills and abilities. The inability to perform a single, particular job, does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i).

As stated earlier, in order to have a disability, the physical or mental illness must substantially limit one or more of the defined major life activities or Plaintiff must have a record of such impairment, or be regarded as having such impairment. Since no record of impairment was provided to MOE, Plaintiff cannot fall under subsection (B). In "regarded as" disability claims, "an employee must show that he was perceived as having an impairment that substantially limits his ability to work." Deppe v United Airlines, 217 F.3d 1262,1266 (9th Cir. 2000). In this case, Plaintiff has not provided any evidence that his supervisors or other co-workers perceived Wells to have an impairment that substantially limited his ability to work. The employer perceived Wells had an anger management problem, but there is no evidence the employer perceived Wells to have a disability under the ADA. Wells' acknowledgment of his dementia illness to Ms. Nichol without additional details and with the affirmation he could still perform his job and needed no assistance

MEMORANDUM ORDER - Page 7
05ORDERS\WELLS

in doing so does not create even an inference Wells should have been perceived in 2003 as having an ADA recognized disability. Accordingly, Wells cannot fall under subsection (C). Therefore, the Court will turn its attention to subsection (A) to see if Wells' illness is a disability under the ADA.

In order to make this determination, the Court must rely on the depositions and declarations of the parties. Plaintiff argues that a diagnosis of primary dementia qualifies as an impairment under the ADA. While other areas of Wells' life (such as hygiene, interpersonal relationships, communication, etc.) were affected by his illness as referenced in the declarations of Wells and his wife, it appears to the Court such other areas were not "substantially limited" as required by the regulations. At the time he was terminated, Dr. Beaver testified that in his opinion, the only major life activity substantially limited by Wells' illness was "working." Dr. Kornfield believes "learning" was another major life activity substantially limited at the time Wells was terminated.

MOE disagrees that working was "substantially limited" under the terms of the ADA since Wells testified in his deposition he could perform the essential functions of his job. Moreover, Defendants argue in applying the regulations, the major life activity of working was not substantially limited when Wells was terminated as he had the ability, by his own admission and the admissions of his doctors to perform the duties of his job or a range of other jobs. Based on the opinions of the treating doctors, the Court finds genuine issues of material fact exist that prevent summary judgment from being granted on whether or not Plaintiff suffered a disability under the ADA at the time of his termination.

### B. If Disabled, Did Plaintiff Request Accommodation?

Defendants next argue that even if for purposes of the motion for summary judgment the Court assumes Plaintiff's illness was a disability under the ADA, Plaintiff has not carried his burden under the ADA since Plaintiff never requested accommodation by the employer until after he had been terminated.

Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with th employee to identify and implement appropriate reasonable accommodations. Hunphrey v. Memorial Hospitals

Assoc., 239 F.3d 1128 (9th Cir. 2001)(citing Barnett v. U.S. Air, 228 F.3d 1105, 1114 (9th Cir. 2000).

The interactive process for finding a reasonable accommodation may be triggered by a request by the employee[3] or by the "employer's recognition of the need for such an accommodation, even if the employee does not specifically make the request." Brown v. Lucky Stores, Inc., 246 F.3d 1182, 1188 (9th Cir. 2001). An employee need not make a request for accommodation in writing and the employee need not use specific words to request accommodation. Taylor v. Phoenixville School Dist, 174. F.3d 142, 158-59 (3d Cir. 1999). The scope of the employee's notice for accommodation depends on the employer's knowledge. Id. at 159. However, an employee must make a request to his employer for modifications of his duties due to his disability as the "[e]mployers cannot assume employees are disabled and need accommodations." Id.

It is undisputed that Plaintiff never requested accommodation under the ADA prior to his termination. While Plaintiff maintains he informed Ms. Nichol of his illness, he stated he was able to perform his job and admits he never requested help of any sort due to his illness in performing the duties of his job. Wells' limited statement regarding his illness does not rise to the level of establishing a need for accommodation. This is similar to the factual scenario of Taylor v. Financial Group, Inc., 93 F3d 155 (5th Cir. 1996) (summarized in Taylor v. Phoenixville School Dist, 174. F.3d 142, 159 (3d Cir. 1999):

> [W]here an employee whose job performance had fallen off mentioned to his employer that he was diagnosed with bipolar disorder. Nothing the employee had done suggested the nature of his illness. When the employer, who said he did not know about the illness, asked the employee if he was okay, the employee responded that he was. The employee never offered further information about his disorder and, even more significantly, could not confirm that he ever explicitly asked for an accommodation or help of any sort. Under these circumstances, the employee has not given sufficient notice to trigger the employer's duty to engage in the interactive process.

Also see, Crandall v. Paralyzed Veterans of America, 146 F.3d 894 (D.C. Cir. 1998).

Even assuming the word "dementia" was mentioned one time by Mr. Wells to Ms. Nichol, it is uncontroverted that it was not said in the context of requesting accommodation and the

---

[3] The Court acknowledges the EEOC's compliance manual provides that "a family member, friend, health professional, or other representative may request a reasonable accommodation on behalf of an individual with a disability." In this case, no facts have been provided by Plaintiff that suggest that any of the listed parties, except Mr. Wells, ever requested accommodation by MOE.

statement, by itself, certainly would not indicate that there was a direct connection between the anger outbursts that had occurred over several years and a recent statement of he suffered from early stage dementia. Plaintiff acknowledges that the word "dementia" was not even mentioned to his employer or by his employer until January 2003, so the employer's suggestion of counseling in 2000 and 2002 does not create knowledge on the part of the employer regarding a "disability" and turn the suggestion of counseling into a request for accommodation by the employee under the ADA. Even in January of 2003, Wells' alleged statement that he suffered from dementia without some further corroboration would not suggest that this was a medical diagnosis or a need for accommodation.

If Wells had a disability, that was not obvious to his employer and he failed to disclose the limitations of his illness to his employer, the fact that the employer suggested counseling for anger management issues does not satisfy the requirement of the employee requesting accommodation. The fact that Wells had letters from his doctors that he never provided to his employer cannot be held against the employer. Wells had a duty to request accommodation in order to exercise any rights he may have had under the ADA or IHRA, and no request ever occurred until after Wells had been terminated. But for the anger outbursts, Wells was performing his job duties for MOE. "Substantially limited" means one is significantly restricted in the ability to perform. Wells never indicated to his employer that his illness caused significant restrictions in performing his duties. A reasonable juror could not find that Wells requested accommodation under the facts of this case or that the termination was due to the fact that he had been diagnosed with the illness of dementia.

Plaintiff maintains in his briefing that MOE started "accommodating" him in 2000 when he had his first anger outburst and continued to do so until he was fired. The Court finds Plaintiff is attempting to make a legal finding by using the term "accommodate." Nothing in the personnel file of Mr. Wells indicates that he had a record of having a disability, could not perform his job or was asking for help. Rather, the employer in noticing an anger management issue, suggested counseling to help the employee to do his job. The employer's suggestion of counseling in 2000 and 2002 without Wells informing the employer of the diagnosis of dementia, does not create knowledge on

the part of the employer regarding a "disability" and turn the employer's suggestion or requirement of counseling into a request for accommodation by employee under the ADA.

Having found Plaintiff failed to request accommodation until after his termination, the employer could not have terminated Wells to avoid participating in the interactive process of accommodation. Plaintiff has not shown that requesting accommodation after termination, creates a duty on the employer to reasonably accommodate or supports a finding the termination in this case was in violation of the ADA or IHRA. Summary judgment in MOE's favor on the issue of whether Plaintiff requested accommodation is appropriate as no genuine issues of material fact exist to show Plaintiff ever requested accommodation prior to being terminated.

### C. Did Employer Know of Plaintiff's Disability and Should have Requested Accommodation for the Employee?

Having found no genuine issue of material facts exists regarding whether Plaintiff requested accommodation, the Court must next determine if the exception applies wherein the employer should have recognized the need for accommodation even if the employee did not request accommodation. "The exception to the general rule that an employee must make an initial request applies, however, only when the employer (1) knows that the employee has a disability, (2) knows, or has reason to know, that the employee is experiencing workplace problems because of the disability, and (3) knows or has reason to know, that the disability prevents the employee from requesting a reasonable accommodation." Brown v. Lucky Stores, Inc., 246 F.3d 1182, 1188 (9th Cir. 2001).

Even assuming Wells informed his employer of his illness of dementia, the Court finds Plaintiff has failed to establish three requisite prongs for the exception to apply in this particular case. The Court will assume the illness suffered by Wells qualifies as an ADA disability and that the employer (via the meeting between Mr. Wells and Ms. Nichol) knew Wells was experiencing workplace problems. The Court does not find that the employer knew the workplace problems were due to his alleged disability. Moreover, the Court cannot assume under the facts of this particular

case that the employer knew or had reason to know that the disability of dementia prevented the employee from requesting reasonable accommodation.

Wells admitted he had copies of letters from doctors in his possession. He knew he was exhibiting inappropriate behavior when his supervisors discussed complaints with him. He recognized his inappropriate behavior and when anger management counseling was suggested he agreed such would be helpful. He supplied evidence of his attendance at counseling to this employer. However, he never provided his employer with information from his doctors regarding his dementia diagnosis.

Even assuming Wells informed Ms. Nichol of his illness, he does not claim he was unable to ask for help due to his dementia or that the symptoms of his illness kept him from being able to ask for help. In fact, he admitted he could do his job and did not ask for help or accommodation from Ms. Nichol or other MOE employees prior to termination. Simply put, the record is void of any evidence that Wells, his doctors, or his wife were unable to request accommodation when they knew of his diagnosis. Furthermore, MOE had no way to know that early stage dementia prevented Wells from requesting reasonable accommodation nor did Dr. Beaver or Dr. Kornfield testify the dementia keep Wells from requesting accommodation.

Plaintiff argues MOE had a duty under the company's discrimination policy to seek a medical evaluation of Wells when he exhibited inappropriate behavior. The Court disagrees the company had such a legal duty. It is undisputed that MOE knew Wells had anger management issues. However, anger outbursts alone are insufficient to put the employer on notice that an employee has a "disability" and are insufficient to shift the burden to the employer to request accommodation. The letter from the counselor indicated that counseling was helping Wells deal with his anger management problems. An employer need not assume a person is disabled when they are unable to control their anger, but are able to perform all other functions of their job satisfactorily.

For the above reasons, the Court finds there is no genuine issue of material fact that prevents summary judgment in Defendant MOE's favor on the issue of whether the employer should have requested accommodation for Wells.

### D. Conclusion

Even assuming Plaintiff's illness is a disability under the ADA and IHRA, the Plaintiff has failed to establish he was suffered discrimination due to his disability. Absent a request for reasonable accommodation by Wells or a finding that the employer had a responsibility to request accommodation for Wells, MOE did not discriminate based on an ADA disability when the company fired Plaintiff.

If Wells had requested accommodation prior to his termination and his employer failed to participate in the interactive process of coming up with an accommodation, then MOE might be liable for disability discrimination if it was determined his illness was a disability under the ADA. But such are not the facts before this Court. Therefore, summary judgment in Defendant MOE's favor on the ADA and IHRA claims are appropriate and the Court need not reach the question of whether the firing was pretextual or whether MOE failed to participate in the interactive accommodation process in good faith.

2. Wrongful Termination in Violation of Public Policy (Count 3)

Plaintiff maintains the employer violated the public policy exception to the at-will employment doctrine by terminating Wells because he is disabled or perceived as being disabled. Defendant MOE denies Plaintiff has established he is disabled or perceived by his employer as disabled based on his objectionable behavior.

In order for the public policy exception to the at-will doctrine to apply, the discharged employee must: (1) refuse to commit an unlawful act; (2) perform and important public obligation; or (3) exercise certain rights or privileges. Sorensen v. Comm Tek, Inc., 118 Idaho 664, 668, 799 P.2d 70, 74 (1990). In this case, Wells claims he was exercising his rights under the ADA and the IHRA and he cannot be fired for exercising such rights. As discussed earlier, the Court finds as a matter of law, that Plaintiff failed to exercise his rights under the ADA and IHRA when he failed to request reasonable accommodation before he was terminated. Because the Court finds Plaintiff did not exercise his rights while employed and his employer did not perceive him to be disabled or to be unable to ask for accommodation, the employer did not terminate Plaintiff for exercising his rights under the ADA or IHRA and this claim must be dismissed.

      3. <u>Intentional Interference (Counts 4 - 6)</u>

      The intentional interference claims in Counts 4 - 6 all involve the conduct of the individuals named as Defendants: Becky Nichol, Rena Bilodeau, Marty Hafer and John Engel. Defendants maintain the claims against these defendants should be dismissed without prejudice as Plaintiff failed to personally serve the individual defendants. Plaintiff filed no response to this argument and did not address Counts 4 - 6 in his response memorandum. The docket in this matter does not reflect personal service of the individuals named as defendants was completed within the time constraints of Fed. R. Civ. P. 4(m). Accordingly, Defendants' motion for summary judgment on these counts is granted.

### Order

      Being fully advised in the premises, the Court hereby orders that:

      1) Defendants' Summary Judgment Motion (Docket No. 31) is GRANTED consistent with this Memorandum Order. Plaintiff's claims against Defendant Mutual of Enumclaw in Counts 1 - 3 are DISMISSED IN THEIR ENTIRETY. Plaintiff's claims in Counts 4 - 6 are DISMISSED WITHOUT PREJUDICE IN THEIR ENTIRETY and Defendants Becky Nichol, Rena Bilodeau, Marty Haffer and John Engel are DISMISSED from the case.

DATED: **August 22, 2005**

_____
Honorable Edward J. Lodge
U. S. District Judge